IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRAIG N. CAREY,  )<br>)<br>　　　　Plaintiff,　　) <br>)<br>v.　　　　　　　　　　　)<br>)<br>KILOLO KIJAKAZI,[1]　　　　)<br>Acting Commissioner of the Social  )<br>Security Administration,　　)<br>)<br>　　　　Defendant.　　) | Case No. CIV-21-209-GLJ |

## OPINION AND ORDER

The claimant Craig N. Carey requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health &*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of hisr past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-eight years old at the time of the administrative hearing. (Tr. 98, 232). He has completed high school and three years of college and has previously worked as a golf course superintendent and golf course instructor. (Tr. 117-121, 271). The claimant alleges he became disabled on December 12, 2017, due to Parkinson's disease, high cholesterol, and acid reflux. (Tr. 270).

### Procedural History

On July 10, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Luke Liter held an administrative hearing and determined that the claimant was not disabled in a written decision dated January 14, 2020. (Tr. 22-37). The Appeals Council denied review, so the ALJ's opinion represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. At steps two and three, he found that the claimant had the severe impairments of Parkinson's disease and obesity, but that he did not meet a Listing at step three. (Tr. 25). At step four, he found that the claimant had the residual functional capacity ("RFC") to perform light

work as defined in 20 C.F.R. § 404. 1567(b), *i.e.*, he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour workday, and stand/walk for six hours combined in an eight-hour workday. However, he further limited the claimant to only frequently, kneeling, stooping, crouching, and crawling; only occasionally, climbing ramps/stairs and balancing; and never climbing ladders/ropes/scaffolds. (Tr. 27). He thus determined that the claimant could return to his past relevant work as a Golf Course Superintendent. (Tr. 35-36). Alternatively, he found that there was other work that the claimant could perform, *e.g.*, small product assembler, packer/inspector, and electronics assembler. (Tr. 37).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly assess the medical opinions in the record, which (ii) led to additional errors during the sequential evaluation, particularly as to cognitive impairments. The Court finds that the ALJ did err in assessing the opinion evidence, and the decision should therefore be reversed.

The relevant medical evidence reveals that the claimant had been diagnosed with Parkinson's disease and received treatment at Movement Disorder Clinic of Oklahoma. In June 2017, the claimant presented with high fatigue and tremors, but his gait was unimpaired, he had fine motor control, and he reported no cognitive impairment. (Tr. 386). By December 12, 2017 (the alleged onset date), the claimant reported ongoing cognitive difficulties with fatigue, as well as a mild and intermittent tremor involving the hand. (Tr. 392). However, the neurological examination that day was largely normal. (Tr. 393). In February 2017, the claimant received treatment at Eastside Clinic in Tahlequah, Oklahoma,

with treatment from Dr. Mark Seratt.  The claimant reported continued difficulty with sleeping, malaise, and fatigue, and he was assessed with attention deficit disorder (without hyperactivity).  (Tr. 408-409).  A March 2018 note states that the claimant had continued to deteriorate, especially cognitively, and that he had "Parkinson's apathy," which limited his ability to withstand the rigors of employment because he has difficulty initiating projects, inability to complete complex tasks, and memory loss preventing him from accomplishing tasks of employment.  (Tr. 420).  Additionally, his insomnia, which is common in Parkinson's patients, worsened his fatigue and ability to maintain a normal work schedule.  (Tr. 420).  Dr. Seratt wrote a letter dated March 14, 2018, indicating that the claimant had been diagnosed with Parkinson's since 2013, and that the disease had progressed such that the claimant was now totally disabled.  (Tr. 552).  An October 2018 treatment note again records the claimant's continued cognitive decline and the presence of "Parkinson's apathy."  (Tr. 488).

On July 19, 2018, the claimant presented to the VA psychiatry team via tele-mental health, with complaints of cognitive symptoms of Parkinson's.  (Tr. 458).  The note states that the claimant didn't know why he was there, but that he had been making mistakes at work prior to quitting in December 2017 because of his Parkinson's disease.  (Tr. 458).  He then reported that non-motor symptoms of sleep and cognitive decline and concentration problems were his major issues.  (Tr. 458).  He did not believe he was depressed, but stated that his short-term memory was impaired, that his speech was starting to slur, and that he got confused at times, such that he had given his brother power of attorney.  (Tr. 458).

On October 9, 2018, Dr. Kenny A. Paris, Ph.D., conducted a mental status examination of the claimant. (Tr. 481-486). The claimant again reported problems with focus and concentration. (Tr. 481). Upon examination, the claimant had largely average abilities, but he was low average for arithmetic and recall after a few minutes, and below average in concentration (digits forward/digits backward). (Tr. 485). Dr. Paris assessed the claimant with mild neurocognitive disorder due to Parkinson's, mood disorder NOS, and anxiety disorder NOS. (Tr. 485). He then stated that the claimant's ability to concentrate was based on memory tasks, and that the claimant's memory skills appeared to be slightly impaired, but that he had no problems with persistence and pace. (Tr. 486). Additionally, he estimated that the claimant had a below average ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers. (Tr. 486).

A November 2018 neurology appointment with the VA Hospital in Muskogee, Oklahoma confirmed that the claimant had variable rest tremors on the right hand, but "no other significant abnormalities on neurological examination." (Tr. 509).

On November 18, 2019, Dr. Mark Seratt completed a number of forms discussing the claimant's ability to work and his RFC. Dr. Seratt indicated that the claimant would, due to his Parkinson's, be absent from work four or more days per month. (Tr. 561, 568). He indicated, *inter alia*, that medication restricted the claimant's ability to function at a productive level of work, and that he could not even understand, remember, and carry out simple instructions in a routine work setting, nor could he maintain concentration and attention for extended periods in a routine work setting or be expected to attend

employment on a sustained basis. (Tr. 562-564). Additionally, he indicated that the claimant could not sustain activity at a pace and with the attention to task as would be required in a competitive workplace, nor could he medically sustain normal work stress in a routine work setting. (Tr. 564). When asked for objective findings, Dr. Seratt noted that the mental disability portion of Parkinson's was subjective, not objective. (Tr. 564). Dr. Seratt gave the claimant a poor prognosis and noted that the claimant lacked the ability to complete the tasks of employment due to mental fogginess. (Tr. 565). He further noted that the claimant's symptoms were exacerbated by stress, and that the "main issue [with] Parkinson's Disease patients is the inability to have clear thought processes to accomplish tasks of employment." (Tr. 568).

State reviewing physicians determined initially and upon reconsideration that the claimant did not have a severe mental impairment. (Tr. 135, 148-149). As to his physical impairments, Dr. David Bailey determined initially that the claimant could perform medium work with no additional limitations. (Tr. 137-138). On reconsideration, Dr. James Metcalf found that the claimant could perform light work, but that he could only frequently stoop, kneel, crouch, and crawl; only occasionally climb ramps/stairs and balance; and never climb ladders/ropes/scaffolds. (Tr. 151-154).

In his written opinion at step four, the ALJ summarized the claimant's hearing testimony and much of the evidence in the record. (Tr. 27-35). The ALJ recognized the claimant's treatment with Dr. Seratt but found his letter asserting that the claimant was disabled to be not persuasive, noting it was conclusory and not considered a medical opinion under the new rules. (Tr. 29). As to Dr. Paris's report, the ALJ noted that the

claimant's ability to think abstractly, function appropriately socially and emotionally, and his judgment were all deemed adequate. (Tr. 31). However, the ALJ did not discuss Dr. Paris's statements that the claimant had a below average ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers. The ALJ then found that Dr. Paris's assessment was persuasive, as well as consistent with and supported by the examination itself, and further asserted that the claimant's concentration, abstraction, intelligence, memory, insight, judgment, and comprehension were good. (Tr. 31). As to the opinions provided by Dr. Seratt, the ALJ provided a lengthy summary and referred to them as "poorly fabricated," then found them not persuasive. (Tr. 31-33). In finding his opinion not persuasive, the ALJ again referred to the forms as "poorly fabricated" instead of forms from the Social Security Administration. Additionally, he found the opinion internally inconsistent because Dr. Seratt indicated that the claimant had an extreme limitation in the ability to perform even simple work, but then indicated that the mental impairment was subjective not objective. (Tr. 33). Third, the ALJ noted that Dr. Seratt had not treated the claimant in over a year. Finally, he asserted that the opinions were inconsistent with other medical evidence because Dr. Seratt indicated slight limitations in handling and fingering in his November 2019 report, but one other exam dated December 2017 was largely normal. (Tr. 33, 397, 569). Finally, the ALJ agreed with state reviewing physicians that the claimant's mental impairments were non-severe, and such a finding was consistent with his mental health treatment. (Tr. 35).

The claimant contends that the ALJ erred in assessing the opinions from Dr. Paris and Dr. Seratt, and the Court agrees. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ did not properly assess these factors for either Dr. Paris or Dr. Seratt. As to Dr. Paris, the ALJ purported to find his opinion persuasive, but failed to account for or discuss what functional limitations might arise from the claimant's below average ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers. It was error to pick and choose among the evidence in this way. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted).

Furthermore, the ALJ's assessment of Dr. Seratt's opinion is flawed. In addition to repeatedly dismissing the form of his opinions, rather than the substance, his assessment of Dr. Seratt in regard to potential mental limitations is flawed. Dr. Seratt's treatment notes consistently referred to the progression of "Parkinson's apathy," in regard to developing cognitive impairments. (Tr. 420, 488). However, instead, the ALJ stated that Dr. Seratt had stated that the claimant's mental disability was subjective, rather than what he actually said – that the evidence supportive of the claimant's mental impairments was subjective, *i.e.*, based on their treatment relationship and including the claimant's reports, rather than objective. It was likewise error for the ALJ to pick and choose among this evidence and it

10

appears the ALJ ignored evidence from more than one examiner. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted]. This is particularly important where the ALJ must consider both severe and nonsevere impairments in formulating the claimant's RFC, and as here, the claimant's physical impairment (Parkinson's) has a documented cognitive component. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013). The ALJ appears to ignore rather than address how documented cognitive limitations are

11

accounted for in the RFC. The Court must be able to follow the logic, and here it cannot. *See id.*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

Because the ALJ failed to properly evaluate the medical opinion evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ is instructed to consider *all* of the evidence in the record, both physical and mental, in assessing the claimant's RFC. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 4th day of November, 2022.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**